| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1**<br>**HOLLAND & KNIGHT LLP**<br>Barbra R. Parlin, Esq. (NJ Bar No. 008211995)<br>787 Seventh Avenue, 31st Floor<br>New York, New York 10019<br>Tel.: (212) 513-3200<br>Fax: (212) 385-9010<br>**barbra.parlin@hklaw.com**<br><br>*Counsel for Capital Funding, LLC* | |
| In re<br><br>CROWN CAPITAL HOLDINGS, LLC., *et al*,<br>      Debtors.[1] | Chapter 11<br><br>Case No: 25-15351 (MBK)<br>(Joint Administration Requested) |

### DECLARATION OF IAN LAGOWITZ IN SUPPORT OF CAPITAL FUNDING, LLC'S MOTION FOR ENTRY OF AN ORDER (I)(A) DISMISSING THE BANKRUPTCY CASE OF BELLEFIELD DWELLINGS APTS LLC, OR, ALTERNATIVELY, (B) ABSTAINING FROM EXERCISING JURISDICTION OVER BELLEFIELD DWELLINGS APTS LLC, OR, ALTERNATIVELY, (C) LIFTING THE AUTOMATIC STAY, AND (II) WAIVING THE TURNOVER REQUIREMENTS OF SECTION 543 OF THE BANKRUPTCY CODE

Pursuant to 28 U.S.C. § 1746, I, Ian Lagowitz, hereby declare as follows under penalty of perjury:

1. I am a Managing Partner at Trigild IVL, LLC ("**Trigild**"), where I oversee complex receivership and fiduciary appointments, manage distressed assets, and lead asset recovery efforts. I am the court-appointed receiver (the "**Receiver**") for the management of the real property owned by Debtor Bellefield Dwellings Apts LLC ("**Bellefield**") at 4400 Centre Avenue, Pittsburgh, Pennsylvania (the "**Property**"). In this capacity, I oversee day-to-day operations, safeguard the Property and Bellefield's assets, ensure compliance with court directives, and work to stabilize

---

[1] The lead debtor in these chapter 11 cases, along with the last four digits of the debtor's federal tax identification number, is Crown Capital Holdings LLC (1411). A complete list of the debtors in these chapter 11 cases and their service address for purposes of these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/CrownCapital.

and preserve the value of the Property and its services for the benefit of residents and all stakeholders.

2. I submit this declaration (the "**Declaration**") in support of Capital Funding, LLC's ("**Capital Funding**") *Motion for Entry of an Order (i)(a) Dismissing the Bankruptcy Case of Bellefield Dwellings Apts LLC, or, Alternatively, (b) Abstaining from Exercising Jurisdiction over Bellefield Dwellings Apts LLC, or, Alternatively, (c) Lifting the Automatic Stay, and (ii) Waiving the Turnover Requirements of Section 543 of the Bankruptcy Code* (the "**Motion**").

3. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of Bellefield's and the Property's operations and finances, my review of the relevant documents, information provided to me by my team and the professionals working under my supervision, and my opinion based on my experience as a receiver for distressed properties.

4. If called to testify, I could and would testify as set forth in this Declaration.

5. I have been employed at Trigild since August 2020. I have been in the real estate field for over 30 years.

6. Since my appointment as Receiver, I have (i) transitioned property management services from Winn Companies to Lynd Property Management, (ii) caused a comprehensive inspection of the Property and requested quotes to remedy fire damage that had gone unaddressed for more than a year, and (iii) assessed the operative financial data, determining that the Property had an outstanding balance of $582,652.50 in unpaid rent and several tenants had fallen out of certification for housing subsidies. Through the course of this process, I have determined that Bellefield's primary assets consist of the Property, the furniture, supplies and fixtures contained in the Property, and cash currently under my control, which assets have been successfully administering for more than nine (9) months.

7. During the last nine months, I have made substantial progress in stabilizing the Property and overseeing several significant repairs, including fixing (i) a major pipe leak in the second-floor community room closet and the resulting water intrusion, (ii) the property's compactor, (iii) a broken pipe affecting residents' plumbing on the 6th and 7th floors, (iv) a plumbing stack issue and (v) a plumbing issue caused by grease buildup that affected multiple floors. In addition, I have diligently worked to increase the Property's marketability by hiring a landscaper and have eased the administrative workload on the Property's staff by acquiring a new Xerox copier. To ensure the long-term sustainability of the Property and to remedy day-to-day maintenance issues, I hired a dedicated maintenance technician.

8. I have also made substantial progress remedying the Property's regulatory and financial deficiencies. I supervised the completion of Management and Occupancy Review responses through the Housing Authority and ensured completion of all required staff program trainings. As a result, the Property is now in good standing with the Housing Authority and has no lingering obligations to maintain compliance. I have ensured that no tenants have past-due recertifications, which has allowed residents to keep their housing subsidies. And through my efforts to recover past-due rent and subsidies, the outstanding obligations owed to the Property have decreased from nearly $600,000 to approximately $75,000.

9. Bellefield is party to a Housing Assistance Payments Renewal Contract for Mark-Up-To-Market Project (the "**HAP Contract**") with the U.S. Department of Housing and Urban Development Office of Housing ("**HUD**"). As Receiver, I have stepped into Bellefield's shoes as a party to the HAP Contract. Funds provided by HUD pursuant to the HAP Contract are deposited into an account under my exclusive control as Receiver. Should I be required to turnover possession and control of the Property, ensuring a smooth transition of the HAP Contract into new

hands would be a burdensome and difficult process with significant risk of disruption of receipt of payments from HUD and therefore of substantial disruption to the management of the Property and residents' lives.

10. Currently, Bellefield and the Property are operating in a stable and efficient manner with sufficient cash flow. The Property's current occupancy rate is approximately 85%.

11. The two most recent collections from September and October were, respectively, approximately $148,000 and $142,000. In addition to these collections, there is currently approximately $754,000 of cash in the receivership account. These amounts are more than sufficient to cover the Property's operating expenses for the foreseeable future without the need for additional funding, whether from Capital Funding or through Debtor-in-Possession financing.

12. In performance of my duties as Receiver, I have overseen a substantial marketing process for the Property conducted by Newmark Group Inc. ("**Newmark**"), who has extensive experience in the affordable housing sector, providing services as real estate broker. It is my understanding that Newmark contacted over [REDACTED] potential purchasers via email and the marketing process resulted in [REDACTED] offers or letters of interest for purchase of the Property ranging from [REDACTED]. It is my opinion that the number of bids received and the fact that many of the bids were for similar amounts demonstrates that the marketing process was well run and that the bids received are value-maximizing for the Property.

13. Prior to the commencement of the Debtors' chapter 11 cases, I had narrowed the bids to two finalists—one in the amount of [REDACTED], and another in the amount of [REDACTED]—and was on the verge of choosing a winning bidder and moving forward with entering into a purchase and sale agreement and closing a sale of the Property in furtherance of distributing the sale proceeds to Bellefield's creditors in accordance with their respective priorities.

14. I believe that the winning bidder will be able to obtain necessary approvals and close on a quicker timeline than a sale through the bankruptcy, and that there is less risk in closing such sale with the existing bidders than the bankruptcy sale process. On the other hand, I believe that the bankruptcy process could interfere with the sale process in the receivership, and cause harm to Bellefield's stakeholders.

15. Prior to filing the bankruptcy, despite that I had become intimately familiar with the Bellefield Property and operations during the nine-month long receivership, the Debtors' professionals did not request information or seek my input regarding any material issues relating to Bellefield including, among other things, Bellefield's cash flows, Bellefield's lack of a need for additional financing at this time, the status of the properties (including the occupancy rates of the Property), my efforts to rectify problems with the Property, the success of such efforts, the status of the receivership sale process, or the potential downsides of a bankruptcy (including interference with the HAP contract and the nearly-completed sale process). Had they done so, I would have provided them with such information and input. Following the bankruptcy, the Debtors' professionals have still failed to request such information.

16. Bellefield has been paying its post-receivership debts as they come due, and is not involved in any significant litigation that warrants the imposition of the automatic stay.

17. Following the bankruptcy, I have invited the proposed stalking horse to participate in the sale process and, if they submit a better bid than those previously obtained, would not hesitate to sell the property to them. At the current time, however, the stalking horse bid proposed in the bankruptcy is substantially worse than the bids received in the receivership.

18. It is my opinion that the commencement of the chapter 11 cases jeopardizes the prospect of a value-maximizing sale of the Property (including by causing confusion and delay)

and would merely burden Bellefield with unnecessary superpriority Debtor-in-Possession debt and substantial unnecessary, wasteful, and duplicative professional fees at a time when Bellefield and the Property are operating stably and efficiently.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 20, 2025

Respectfully submitted,

_____
Ian Lagowitz
Managing Partner, Trigild IVL, LLC